Joanna Citron Day
District of Columbia Bar No. 477833
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
Phone: (202) 514-3394
Fax: (202) 598-5318
Email: joanna.day@usdoj.gov
*Attorney for Plaintiff, United States of America*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                    Case No. 4:22-cv-0444-DCN

CITY OF DRIGGS, IDAHO and
STATE OF IDAHO,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## CONSENT DECREE

**TABLE OF CONTENTS**

I.      JURISDICTION AND VENUE ............................................................................2

II.     APPLICABILITY ...............................................................................................2

III.    OBJECTIVES .....................................................................................................3

IV.   DEFINITIONS ....................................................................................................4

V.     CIVIL PENALTY ...............................................................................................6

VI.    COMPLIANCE REQUIREMENTS ..................................................................7

        A.   CONTROL OF UNDESIRABLE POLLUANTS AND INDUSTRIAL USERS ...7

        B.   COLLECTION SYSTEM MONITORING .............................................8

        C.   INFLUENT WWTP HEADWORKS MONITORING .............................10

        D.   LAGOON MONITORING AND SEWAGE SLUDGE MANAGEMENT .........10

        E.   WASTEWATER TREATMENT PLANT UPGRADE ....................................12

        F.   INFLOW AND INFILTRATION ........................................................15

        G.   STAFFING ....................................................................................16

        H.   OPERATIONS, MAINTENANCE, AND QUALITY ASSURANCE ...............17

        I.   APPROVAL OF DELIVERABLES ....................................................17

VII.   REPORTING REQUIREMENTS .....................................................................19

VIII.  PUBLIC WEBSITE ..........................................................................................22

IX.    STIPULATED PENALTIES .............................................................................23

X.      FORCE MAJEURE ..........................................................................................27

XI.    DISPUTE RESOLUTION ................................................................................29

XII.   INFORMATION COLLECTION AND RETENTION .....................................32

XIII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ........................34

XIV.  COSTS ..............................................................................................................36

XV.   NOTICES ..........................................................................................................36

XVI.  EFFECTIVE DATE ..........................................................................................37

XVII. RETENTION OF JURISDICTION ................................................................38

XVIII. MODIFICATION ...........................................................................................38

XIX.  TERMINATION ..............................................................................................38

XX.   PUBLIC PARTICIPATION ............................................................................39

XXI.  SIGNATORIES/SERVICE .............................................................................39

XXII. INTEGRATION ..............................................................................................40

XXIII. 26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION..............................................40

XXIV. HEADINGS ...........................................................................................................40

XXV.  FINAL JUDGMENT ...............................................................................................41

XXVI. APPENDICES.........................................................................................................41

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action on October 24, 2022 [Dkt. 1], as amended on January 15, 2025 [Dkt. 27] ("Complaint") pursuant to Section 309 of the Clean Water Act ("CWA" or "Act"), 33 U.S.C. § 1319, alleging that Defendant, City of Driggs, Idaho ("Driggs"), violated and continues to violate the National Pollutant Discharge Elimination System Permit No. ID-0020141 ("NPDES Permit") issued under Section 402 of the CWA, U.S.C. §1342.  Defendant, State of Idaho ("State") is joined as a Party under Section 309(e) of the CWA, 33 U.S.C. § 1319(e).

WHEREAS, the Complaint against Defendants alleges that Driggs violated and continues to violate Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342, by failing to comply with the requirements of its NPDES Permit for Driggs' Wastewater Treatment Plant ("WWTP") located West of Driggs on West Bates Road.  Driggs' noncompliance includes 3,237 exceedances of NPDES Permit effluent limits, including those for ammonia, five-day biochemical oxygen demand ("BOD5"), E. coli bacteria, and pH.  Driggs also had multiple non-effluent limit NPDES Permit violations, including failure to sample at the frequency required by the NPDES Permit, failure to use EPA-approved quality assurance/quality control ("QA/QC") and chain of custody procedures, failure to comply with records contents requirements in the NPDES Permit, and failure to use an approved sampling method.  The Complaint also alleges that Driggs failed to meet deadlines related to NPDES Permit compliance included in a May 21, 2018 Compliance Order on Consent ("2018 Order") issued by EPA.

WHEREAS, Driggs has determined that conversion of its current WWTP to an Activated Sludge Process with Membranes WWTP is necessary to achieve compliance with its NPDES Permit.

WHEREAS, Driggs does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the CWA, 33 U.S.C. § 1319(b). Venue lies in this District pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because it is the location where Driggs is located and where the claims arose.  For purposes of this Consent Decree, or any action to enforce this Consent Decree, Defendants consent to the Court's jurisdiction over this Consent Decree and any such action and over Defendants and consent to venue in this judicial district.

2.    For purposes of this Consent Decree, Driggs agrees that the Complaint states claims upon which relief may be granted pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## II.    APPLICABILITY

3.    The obligations of this Consent Decree apply to and are binding upon the United States and the State, and upon Driggs and any successors, assigns, or other entities or persons otherwise bound by law.

2

4.      No transfer of ownership or operation of the Wastewater Treatment Plant ("WWTP") and Wastewater Collection and Transmission System ("WCTS"), whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Driggs of its obligation to ensure that the terms of the Consent Decree are implemented.  At least 30 Days prior to such transfer, Driggs shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA, DOJ, and the United States Attorney for the District of Idaho, in accordance with Section XV (Notices).  Any attempt to transfer ownership or operation of the WWTP and WCTS without complying with this Paragraph constitutes a violation of this Decree.

5.      Driggs shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Decree, as well as to any contractor retained to perform Work required under this Consent Decree.  Driggs shall condition any such contract upon performance of the Work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Driggs shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.    OBJECTIVES

7.      The Objective of this Consent Decree is for Driggs to achieve and maintain compliance with the CWA, applicable federal and State regulations, and its NPDES Permit, with the goal of eliminating discharges that fail to meet the effluent limitations established in its NPDES Permit and eliminating non-effluent NPDES Permit violations.

# IV.    DEFINITIONS

8.    Terms used in this Consent Decree that are defined in the CWA or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the CWA or such regulations, unless otherwise provided in this Consent Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

a.    "CWA" or "Act" shall mean the Clean Water Act, formally titled the Federal Water Pollution Control Act, as amended, 33 U.S.C. §§ 1251 *et seq.* and the regulations promulgated thereunder;

b.    "Complaint" means the complaint filed by the United States in this action, as amended on January 15, 2025;

c.    "Consent Decree" or "Decree" means this Decree and all appendices attached hereto (listed in Section XXVI);

d.    "Day" means a calendar day unless expressly stated to be a business day. In computing any period of time for a deadline under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day;

e.    "Defendants" means the City of Driggs and State of Idaho;

f.    "DOJ" means the United States Department of Justice and any of its successor departments or agencies;

g.    "Driggs" shall mean the City of Driggs, Idaho;

h.    "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies;

i.    "Effective Date" means the definition provided in Section XVI;

j.      "NPDES Permit" shall mean the National Pollutant Discharge Elimination System Permit issued by EPA for the WWTP, Permit Number ID-0020141, on November 4, 2010 and became effective on January 1, 2011, and any future extended, modified, or reissued permits;

k.      "Paragraph" means a portion of this Decree identified by an Arabic numeral;

l.      "Parties" means the United States, the State of Idaho, and City of Driggs, Idaho;

m.      "Section" means a portion of this Decree identified by a Roman numeral;

n.      "State" means the State of Idaho;

o.      "United States" means the United States of America, acting on behalf of EPA;

p.      "Victor" means the City of Victor, Idaho.

q.      "Wastewater Collection and Transmission System" or "WCTS" shall mean the municipal wastewater collection, retention, and transmission system, including but not limited to, all pipes, force mains, gravity sewer lines, lift stations, pump stations, pumps, manholes, and appurtenances thereto, which are owned or operated by Driggs and which flow to the Driggs' WWTP;

r.      "Wastewater Treatment Plant" or "WWTP" shall mean all facilities, devices, or systems which are owned, managed, operated, or maintained by Driggs for the storage, treatment, recycling, or reclamation of municipal wastewater, including the WWTP located at 1250 West Bates Road;

s.      "Work" shall mean all activities Driggs is required to perform under this

Consent Decree.

## V.    CIVIL PENALTY

9.    Within 30 Days after the Effective Date, Driggs shall pay the sum of $400,000 as a civil penalty, together with interest accruing from the date of lodging of the Consent Decree, at the rate specified in 28 U.S.C. § 1961 as of the date on which the Consent Decree is lodged with the Court.

10.    Driggs shall pay the civil penalty due, together with interest, by FedWire Electronic Funds Transfer ("EFT") to the DOJ account, in accordance with instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of Idaho after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Driggs shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions to:

Mayor August Christensen
60 S. Main St.
P.O. Box 48
Driggs, ID 83422
mayor@driggsidaho.org

on behalf of Driggs.  Driggs may change the individual to receive payment instructions on its behalf by providing written notice of such change to DOJ and EPA in accordance with Section XV (Notices).

11.    At the time of payment, Driggs shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to DOJ via email or regular mail in accordance with Section XV; and (iii) to EPA in accordance with Section XV.

Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent

Decree in *United States v. City of Driggs, Idaho and State of Idaho* and shall reference the civil

action number 4:22-cv-0444-DCN, CDCS Number, and DOJ case number 90-5-1-1-12596.

12.    Defendant shall not deduct any penalties paid under this Decree pursuant to this

Section or Section IX (Stipulated Penalties) in calculating its federal income tax.

## VI.    COMPLIANCE REQUIREMENTS

### A.    CONTROL OF UNDESIRABLE POLLUANTS AND INDUSTRIAL USERS

13.    <u>Industrial Dischargers.</u>  Pursuant to NPDES Permit Part II.C (Control of

Undesirable Pollutants and Industrial Users), Driggs must require industrial users discharging to

its WWTP to comply with any applicable requirements of 40 C.F.R. Parts 403 and 471 (Part

II.C.1) and to not allow introduction of pollutants detailed in NPDES Permit Part II.C.2(a)–

II.C.2(i).  To comply with NPDES Permit requirements listed in Part II.C.1 and Part II.C.2,

Driggs shall require new non-residential businesses or buildings to complete an industrial user

survey at the time of permitting.  Driggs shall require inclusion of an industrial user survey with

all building/business permits for all non-residential business and new construction. Driggs will

also develop and implement a process to follow-up with any industrial users that fail to respond to

the survey.

14.    <u>Sampling of Industrial Dischargers:</u>  Driggs will conduct sampling of discharges

from industrial users to comply with NPDES Permit Part II.C.1 and 2 and Driggs' Collection

System Monitoring Plan (Attachment C).

15.    In each annual report required by Section VII (Reporting Requirements), Driggs

shall provide a summary report documenting its sampling efforts and plan to control undesirable

pollutants and industrial users as required by NPDES Permit Part II.C and mitigate impacts to the

WWTP, including but not limited to responses from industrial user surveys, sampling locations with corresponding sampling results, and a description of any other follow-up actions taken by Driggs or industrial users.

**B.        COLLECTION SYSTEM MONITORING**

16.    <u>Collection System Monitoring.</u>  In accordance with Driggs' Collection System Monitoring Plan (attached as Appendix C), Driggs will conduct the following sampling in its collection system for a minimum of two years (eight quarters):

a.        Sampling once every quarter to identify seasonal fluctuations at locations identified by Driggs in its Collection System Monitoring Plan;

b.        Sampling once every quarter at additional locations identified by Driggs in its Collection System Monitoring Plan will be conducted, if necessary, based on responses to industrial user surveys;

c.        Sampling twice every month effluent from Victor at the Driggs South Lift Station to monitor effluent from Victor.  Sampling will be conducted during the same weeks as Driggs' twice monthly effluent monitoring requirements at the WWTP detailed in Part I.B., Table 1 of the NPDES Permit.

d.        Pursuant to Paragraphs 22 and 23 below, Driggs shall collect quarterly samples from the influent of the WWTP and analyze them for oil and grease.  If the average of two quarterly influent sampling results for oil and grease is greater than 100 mg/L, Driggs shall add oil and grease sampling to the sampling detailed in Paragraph 16 above for a minimum of two years (eight quarters).

17.     Until September 1, 2029, if collection system monitoring results exceed the following threshold values listed in subparagraphs below for BOD, TSS, ammonia, pH, and oil and grease, Driggs must investigate and provide an explanation of the exceedances:

    a.     BOD > 500 mg/L;

    b.     TSS > 400 mg/L;

    c.     Ammonia > 70 mg/L;

    d.     pH < 5 or >10; and

    e.     Oil and Grease > 150 mg/L.

18.     After September 1, 2029, the City shall update its Collection System Monitoring Plan with updated threshold values for BOD, TSS, ammonia, pH, and oil and grease for the Activated Sludge Process with Membranes WWTP based on calculation of two times the design criteria for the Activated Sludge Process with Membranes WWTP.  Driggs shall submit the updated Collection System Monitoring Plan to EPA for review and approval no later than September 30, 2029, which shall include the updated threshold values for BOD, TSS, ammonia, pH, and oil and grease, including the calculations Driggs prepared to reach the updated threshold values.

19.     After two years (eight quarters) and subject to EPA's review and approval, Driggs may propose to reduce the sampling frequency at a sampling location other than the Driggs South Lift Station to once per year if variation in concentrations of all sampled analytes at a single location between at least two consecutive quarterly sampling events is less than 15 percent.  In such a proposal, Driggs must include all documentation, including calculations, to demonstrate variation between analytes in at least two consecutive quarterly sampling events is less than 15 percent.  Driggs shall submit any proposal requesting to reduce the sampling

frequency as described in this Paragraph with the annual report required by Section VII (Reporting).

20.    If Driggs is conducting annual sampling pursuant to Paragraph 19 above and two consecutive annual sample results contain a variation greater than 15 percent, sampling frequency shall revert immediately to the original quarterly frequency pursuant to Paragraph 16 for the duration of the Consent Decree.  In each quarterly report required by Section VII (Reporting), Driggs shall provide all sampling results described in Paragraphs 16 through 20.

### C.    INFLUENT WWTP HEADWORKS MONITORING

21.    Once per month, Driggs will take a 24-hour, composite sample and analyze it for BOD, ammonia, and TSS.

22.    Once per quarter, during one 24-hour period, Driggs will take a series of 8 discrete 3-hour composite samples and analyze them for BOD, ammonia, oil and grease, and TSS.

23.    Once per quarter, Driggs shall take 7 sequential 24-hour composite samples and analyze them for oil and grease and ammonia.

24.    Once per quarter, Driggs shall take 4 sequential 24-hour composite samples and analyze them for BOD and TSS.

25.    Driggs shall conduct continuous monitoring of flow, pH, and temperature.

26.    In each quarterly report required by Section VII (Reporting), Driggs shall provide all influent monitoring results described in Paragraphs 21 through 25 above.

### D.    LAGOON MONITORING AND SEWAGE SLUDGE MANAGEMENT

27.    Lagoon Monitoring and Sewage Sludge Management Plan.  Driggs has developed a Lagoon Monitoring and Sewage Sludge Management Plan (attached as Appendix B) to prevent

NPDES Permit violations and properly operate and maintain its lagoons, which are appurtenances to the WWTP, as required by Part IV.E of the NPDES Permit.  In compliance with this Plan, Driggs shall:

       a.     Conduct an annual survey of sewage sludge in the lagoons;

       b.     Estimate volumes and accrual rates of sewage sludge in the lagoons;

       c.     Indicate the actions Driggs shall take to manage sewage sludge in the lagoons according to the results of the annual survey; and

       d.     Sample effluent from the lagoon once per month for BOD, TSS, ammonia, pH, temperature, and E. coli in addition to monthly effluent monitoring requirements at the WWTP detailed in Part I.B., Table 1 of the NPDES Permit.

28.     In each quarterly report required by Section VII (Reporting), Driggs shall provide sampling results detailed in Paragraph 27.d above.

29.     <u>Lagoon Utilization Plan</u>.  Driggs shall develop and submit to EPA for review and approval by January 15, 2026, a Lagoon Utilization Plan.  The Lagoon Utilization Plan shall include the following required elements:

       a.     Description for how Driggs plans to utilize the lagoon between January 15, 2026 and December 15, 2028;

       b.     Description for how Driggs plans to utilize or decommission the lagoons after December 15, 2028;

       c.     A timeline and description of each proposed change of Driggs' use of the lagoons, including whether any proposed change includes sewage sludge removal.  If any change includes sewage sludge removal, the Lagoon Utilization Plan must include a description of the process for sewage sludge removal and indicate whether Driggs plans to use or dispose of

11

sewage sludge according to 40 C.F.R. Parts 258 and 503;

    d. If Driggs plans to decommission the lagoons, the Lagoon Utilization Plan shall include a plan and schedule for decommissioning the lagoons;

    e. Driggs must, at all times, comply with applicable federal, state, and local law, regulation, permits and requirements, including 40 C.F.R. Parts 258 and 503.

  30. <u>Sewage Sludge Management Plan.</u>  By May 14, 2028, Driggs shall submit to EPA for review and approval a Sewage Sludge Management Plan that shall identify the actions Driggs shall implement to manage sewage sludge from the lagoons, including for use or disposal, with a timeline for each action.

  31. Driggs must, at all times, comply with applicable federal, state, and local law, regulation, permits and requirements, including 40 C.F.R. Parts 258 and 503.

  32. Driggs must remove sewage sludge from the existing lagoons by September 30, 2029, in accordance with the Sewage Sludge Management Plan.

  33. Driggs must give notice to EPA and the State as soon as possible, but not later than 30 days prior to any planned physical alterations or additions that result in a change to Driggs' sewage sludge use or removal practices, as required by Section IV.I of the NPDES Permit.

## E. WASTEWATER TREATMENT PLANT UPGRADE

  34. Driggs shall convert its current WWTP to an Activated Sludge Process with Membranes WWTP as recommended in the Facility Plan adopted by Driggs on December 19, 2023.  Driggs shall complete the items listed in this Paragraph and provide notice and certification to EPA by each deadline listed below, in accordance with the requirements of Section XV (Notices).  Each submission or notice shall include the elements identified in

subparagraphs 34.a through 34.r below, as applicable (a list of deadlines for ¶ 34 also in attached Appendix A).

    a.    Preliminary Design by April 24, 2025.  Preliminary Design shall include:

        (1)    Site layout and location identified;

        (2)    Overall scope of Activated Sludge Process with Membranes WWTP confirmed;

        (3)    Environmental assessments performed;

        (4)    Topographic surveys completed;

        (5)    Hydrologic analysis completed;

        (6)    Selection of material (concrete, steel, earth); and

        (7)    Selection of treatment technologies.

    b.    60% Design by April 24, 2025.  60% Design shall include:

        (1)    Driggs' review and revision of items identified in the previous stage;

        (2)    Sizing of equipment is underway;

        (3)    Constructability considerations and logistics identified; and

        (4)    Initial projections that Activated Sludge Process with Membranes WWTP sizing meets flow and loading projections for all parameters identified in the NPDES Permit.

    c.    90% Design by August 7, 2025.  90% Design should closely resemble 100% Design pending any modifications required for permitting or code and shall include:

        (1)    All plans and specifications for the project completed including but not limited to drawings and details for grading, plumbing,

13

electrical, structural; and

    (2)        Final schedule.

    d.        Financial plans approved;100% Design by January 15, 2026.  100% Design shall include:

    (1)         Confirmation that Activated Sludge Process with Membranes WWTP sizing meets flow and loading projections for all parameters identified in the NPDES Permit;

    (2)        Confirmation that all design is complete and meets requirements/is approved by the State; and

    (3)        Confirmation that Project is ready to go out for bid.

    e.        Lagoon Utilization Plan by January 15, 2026, in compliance with Paragraph 29.

    f.        Staffing Plan to be completed by January 15, 2026, in compliance with Paragraphs 37 through 39.

    g.        Contractor Notice to Proceed by June 9, 2026.

    h.        Complete conversion of portion of lagoon to equalization basin by April 30, 2027.

    i.        Complete installation and implementation of new blowers by May 30, 2027.

    j.        Construction completion of biosolids handling facility associated with the Activated Sludge Process with Membranes WWTP by May 14, 2028.

    k.        Sewage Sludge Management Plan by May 14, 2028, in compliance with Paragraph 30.

l. Confirmed list of staff positions in place for operation of Activated Sludge Process with Membranes WWTP by October 18, 2028.

m. Completion of construction of Activated Sludge Process with Membranes WWTP by December 15, 2028.

n. Completion of updated Operation and Maintenance Plan, as required by Part II.A. of the NPDES Permit, by December 15, 2028.

o. Submission of updated QAP that shall comply with Part II.B of the NPDES Permit by December 15, 2028, and in compliance with Paragraph 40.

p. Begin performance testing for Activated Sludge Process with Membranes WWTP (fully online) by January 10, 2029.  Performance testing shall occur after the commissioning stage and shall start once the Activated Sludge Process with Membranes WWTP receives raw sewage.

q. Continuously operate Activated Sludge Process with Membranes WWTP in compliance with NPDES Permit by September 1, 2029.

r. Driggs must manage sewage sludge from existing lagoons in accordance with the Sewage Sludge Management Plan by September 30, 2029, in compliance with Paragraph 32.

**F. INFLOW AND INFILTRATION**

35. During the period of high groundwater levels between May 1st and July 31st of each year in Driggs, Driggs shall continue its annual efforts to locate and quantify sources of inflow and infiltration coming into the WCTS.  Identified sources of inflow and infiltration found to contribute flows that are in excess of 5 percent of the total daily flows to the WWTP at

any time of year shall be repaired within eighteen months from the date on which they were identified by Driggs.

36.     In each annual report required under Section VII (Reporting), Driggs shall summarize inflow and infiltration monitoring results and corrective actions taken that year and any potential corrective actions requiring additional evaluation to be completed with a schedule for completion of the corrective actions.

### G.     STAFFING

37.     By January 15, 2026, Driggs shall develop and submit a Staffing Plan.  The Staffing Plan shall explain Driggs' plan to retain adequately trained and appropriately certified and licensed staff required to operate and maintain the Activated Sludge Process with Membranes WWTP as designed.  The Staffing Plan shall include at a minimum:

     a.     Annual staff hour estimates for the Activated Sludge Process with Membranes WWTP for:

          (1)     Operations;

          (2)     Maintenance;

          (3)     Laboratory;

          (4)     Biosolids/ Sewage Sludge Handling;

          (5)     Yardwork; and

          (6)     Automation, SCADA, on-call.

     b.     Annual staff hour estimates for the WCTS, including:

          (1)     Operations (including sampling);

          (2)     Maintenance; and

          (3)     Industrial user and undesirable pollutants monitoring (including

sampling).

    c.    Certification requirements needed to properly operate and maintain the facility Activated Sludge Process with Membranes WWTP and WCTS, in accordance with industry standards and applicable requirements.

38.    As part of its Staffing Plan, Driggs must include a proposal to hire contract operators by July 20, 2028, if its best efforts to hire sufficient internal staff are unsuccessful.

39.    Staffing consistent with the Staffing Plan must be in place by October 18, 2028.

## H.    OPERATIONS, MAINTENANCE, AND QUALITY ASSURANCE

40.    By March 1, 2025, Driggs shall provide to EPA its Quality Assurance Plan ("QAP") for its current WWTP, as required by Part II.B. of the NPDES Permit. Driggs shall at all times maintain an adequate QAP and amend the QAP whenever there is a modification in sample collection, sample analysis, or other procedure addressed by the QAP, as required by Part II.B.4 of the NPDES Permit. In each Annual Report, Driggs shall summarize QAP updates developed and implemented over the previous year.

41.    At all times, Driggs shall maintain and implement an Operations and Maintenance ("O&M") Plan as required by Part II.A of its NPDES Permit. Driggs shall maintain a preventative maintenance tracking system as part of its O&M Plan. In each annual report, Driggs shall provide an update from its preventative maintenance tracking system that includes the number of work orders issued; number of work orders completed; and number of work orders outstanding.

## I.    APPROVAL OF DELIVERABLES

42.    <u>Approval of Deliverables</u>. After review of any plan, report, or other item that is required to be submitted for approval pursuant to this Consent Decree, EPA will in writing:

(a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

43.     If the submission is approved pursuant to Paragraph 42(a), Driggs shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part pursuant to Paragraph 42(b) or (c), Driggs shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions.

44.     If the submission is disapproved in whole or in part pursuant to Paragraph 42(c) or (d), Driggs shall, within 45 Days or such other time as EPA and Driggs agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, Driggs shall proceed in accordance with the preceding Paragraph.

45.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Driggs to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies.

46.     If Driggs elects to invoke Dispute Resolution as set forth in Section XI (Dispute Resolution) concerning a decision by EPA to disapprove, approve on specified conditions, or modify a deliverable, Driggs shall do so by sending a Notice of Dispute in accordance with Paragraph 78 within 30 Days (or such other time as EPA and Driggs agree to in writing) after receipt of the applicable decision.

47.     Any stipulated penalties applicable to the original submission, as provided in Section IX, accrue during the 45 Day period or other specified period, but shall not be payable

unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Driggs' obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

48.     Permits.  Where any compliance obligation under this Section requires Driggs to obtain a federal, state, or local permit or approval, Driggs shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Driggs may seek relief under the provisions of Section X (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Driggs has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## VII.    REPORTING REQUIREMENTS

49.     Driggs shall submit the following reports to EPA and DOJ at the addresses set forth Section XV (Notices):

a.      By February 1, May 1, August 1, and November 1 of each year after the lodging of this Consent Decree, until termination of this Decree pursuant to Section XIX, Driggs shall submit by email, a quarterly report for the preceding three months that includes collection system monitoring sampling results in compliance with Paragraphs 16 through 20 above; influent monitoring results in compliance with Paragraphs 21 through 25 above; lagoon effluent sampling in compliance with Paragraph 27.d above; discharge monitoring reports submitted pursuant to the NPDES Permit and the monthly discharge monitoring report spreadsheets; a summary list of any noncompliance with the requirements of the NPDES Permit; the status of any construction or

compliance measures; completion of milestones; problems encountered or anticipated, together with implemented or proposed solutions; status of permit applications; operation and maintenance; and reports to state agencies.

b.      By November 1 of each year after the lodging on this Consent Decree, until termination of this Decree pursuant to Section XIX, Driggs shall submit via email an annual report for the preceding year that includes summary report of industrial user information in compliance with Paragraph 15, influent sampling results in compliance with Paragraphs 21 through 25; actions Driggs shall take to manage sewage sludge in compliance with Paragraphs 30 through 33; a summary of odor complaints received by Driggs and odor events identified by Driggs, including Driggs' response(s) to both odor complaints and odor events; inflow and infiltration-related information in compliance with Paragraph 35; QAP updates in compliance with Paragraph 40; maintenance tracking system updates in compliance with Paragraph 41; the status of any construction or compliance measures; completion of milestones; problems encountered or anticipated, together with implemented or proposed solutions; status of permit applications; operation and maintenance; and reports to state agencies.

c.      The quarterly report shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If Driggs violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Driggs shall notify DOJ and EPA of such violation and its likely duration, in writing, within ten business days of the Day Driggs first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the

20

time the report is due, Driggs shall so state in the report.  Driggs shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Driggs becomes aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Driggs of its obligation to provide the notice required by Section X (Force Majeure).

        d.     The annual report required by Paragraph 49.b may be submitted concurrently with the November 1 quarterly report required by Paragraph 49.a., such that Driggs may submit one report capturing information required by Paragraphs 49.a., 49.b., and 49.c on November 1 .

        50.     Whenever any violation of this Consent Decree, or of any applicable permits or any other event affecting Driggs' performance under this Decree may pose an immediate threat to the public health or welfare or the environment, Driggs shall notify EPA by email at R10enforcement@epa.gov and the EPA contacts listed in Section XV as soon as possible, but no later than 24 hours after Driggs first became aware of the violation or event.  This procedure is in addition to the requirements set forth in the Paragraph 49.c.

        51.     Each report submitted by Driggs under this Section shall be signed by an official of Driggs and include the following certification:

> I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

52.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

53.     The reporting requirements of this Consent Decree do not relieve Driggs of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

54.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII.   PUBLIC WEBSITE

55.     Driggs maintains a publicly available website titled "Public Outreach on Plant (POOP) Updates" to provide information to the public related to its WWTP:

https://driggsidaho.org/departments/public-works/wwtp

56.     Driggs shall post the following information on its website, "Public Outreach on Plant (POOP) Updates":

      a.     Consent Decree.  Driggs shall post on the website an electronic copy of the entered Consent Decree.

      b.     Consent Decree Submissions.  Driggs shall post to the website all annual reports required by Section VII (Reporting).

      c.     Public Notification required under Driggs' NPDES Permit.  Driggs shall comply with all public notice requirements under its NPDES Permit, including the requirement in NPDES Permit Part III.I to immediately notify the public, health agencies and other affected entities (e.g., public water systems) of any overflow which Driggs owns or has operational control; or any unanticipated bypass or upset that exceeds any effluent limitation in the NPDES

Permit, by posting this information on the website.

## IX.    STIPULATED PENALTIES

57.    Driggs shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section X (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any Work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

58.    <u>Late Payment of Civil Penalty</u>.  If Driggs fails to pay the civil penalty required to be paid under Section V (Civil Penalty) when due, Driggs shall pay a stipulated penalty of $5,000 per Day for each Day that the payment is late.

59.    <u>Permit Violations</u>.  The following stipulated penalties shall accrue for each violation of any requirement of Driggs' NPDES Permit specified below:

a.    From the date of lodging of the Consent Decree until August 31, 2029: For each violation of the requirement to comply with all daily, weekly, or monthly effluent limits on parameters set forth in the NPDES Permit, Driggs shall pay a stipulated penalty as follows:

> <u>Penalty Per Violation</u>
> $500 for each violation of each daily or instantaneous maximum limit
> $1,000 for each weekly or seven-day limit
> $2,000 for each violation of each monthly or 30-day limit

b.    From September 1, 2029 through termination of the Consent Decree: For each violation of the requirement to comply with all daily, weekly, or monthly effluent limits on parameters set forth in the NPDES Permit, Driggs shall pay a stipulated penalty as follows:

> <u>Penalty Per Violation</u>
> $5,000 for each violation of each daily or instantaneous maximum limit $10,000 for each weekly or seven-day limit
> $20,000 for each violation of each monthly or 30-day limit

c.      Any other violations of the NPDES Permit shall be subject to the

following penalties per day.

| Penalty Per Violation Per day | Period of Noncompliance |
|---|---|
| $    1,500 | 1st through 14th Day |
| $    2,000 | 15th through 30th Day |
| $    2,500 | 31st Day and beyond |

60.    Compliance Requirements:

a.      Failure to Conduct Required Sampling in Paragraphs 16 through 20

(Collection System Monitoring) and 21 through 25 (Influent Headworks Monitoring).

| Penalty Per Violation Per day | Period of Noncompliance |
|---|---|
| $       750 | 1st through 14th Day |
| $    1,500 | 15th through 30th Day |
| $    2,500 | 31st Day and beyond |

b.      Failure to Submit Timely Complete Work and Provide Submissions for

Conversion to Activated Sludge Process with Membranes WWTP listed in Paragraph 34.a

through 34.p:

| Penalty Per Violation Per day | Period of Noncompliance |
|---|---|
| $       500 | 1st through 14th Day |
| $    1,500 | 15th through 30th Day |
| $    2,500 | 31st Day and beyond |

c.      Failure to comply with Paragraph 34.q by September 1, 2029:

| Penalty Per Violation Per day | Period of Noncompliance |
|---|---|
| $    1,500 | 1st through 14th Day |
| $    2,500 | 15th through 30th Day |
| $    5,000 | 31st Day and beyond |

d.      Failure to comply with Paragraph 34.r (manage sewage sludge from

existing lagoons in accordance with the Sewage Sludge Management Plan by September 30,

2029):

24

| Penalty Per Violation Per day | Period of Noncompliance |
|---|---|
| $ 1,000 | 1st through 14th Day |
| $ 2,000 | 15th through 30th Day |
| $ 3,000 | 31st Day and beyond |

> e.      Failure to comply with Lagoon Monitoring and Sewage Sludge

Management Plan, Lagoon Utilization Plan, and Sewage Sludge Management Plan requirements

under Paragraphs 27, 29, and 30–33:

| Penalty Per Violation Per day | Period of Noncompliance |
|---|---|
| $ 750 | 1st through 14th Day |
| $ 1,500 | 15th through 30th Day |
| $ 2,500 | 31st Day and beyond |

61.      Reporting Requirements.  The following stipulated penalties shall accrue per

violation per Day for each violation of the reporting requirements of Section VII:

| Penalty Per Violation Per day | Period of Noncompliance |
|---|---|
| $ 200 | 1st through 14th Day |
| $ 600 | 15th through 30th Day |
| $ 1,000 | 31st Day and beyond |

62.      Noncompliance with the Consent Decree.  The following stipulated penalties shall

accrue per violation per Day for each violation of Paragraphs 4, 13, 14, 35, 37, and 38–41:

| Penalty Per Violation Per day | Period of Noncompliance |
|---|---|
| $ 200 | 1st through 14th Day |
| $ 600 | 15th through 30th Day |
| $ 1,000 | 31st Day and beyond |

63.      Stipulated penalties under this Section shall begin to accrue on the Day after

performance is due or on the Day a violation occurs, whichever is applicable, and shall continue

to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated

penalties shall accrue simultaneously for separate violations of this Consent Decree.

64.      Driggs shall pay any stipulated penalty within 30 Days of receiving the United

States' written demand.

65.    The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

66.    Stipulated penalties shall continue to accrue as provided in Paragraph 63, during any Dispute Resolution, but need not be paid until the following:

a.    If the dispute is resolved by agreement of EPA and Driggs or by a decision of EPA that is not appealed to the Court, Driggs shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.    If the dispute is appealed to the Court and the United States prevails in whole or in part, Driggs shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.    If Driggs appeals the District Court's decision, Driggs shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

67.    Driggs shall pay stipulated penalties owed to the United States in the manner set forth in Paragraph 9 and with the confirmation notices required by Paragraph 11, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

68.    If Driggs fails to pay stipulated penalties according to the terms of this Consent Decree, Driggs shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to

limit the United States from seeking any remedy otherwise provided by law for Driggs' failure to pay any stipulated penalties.

69.     The payment of penalties and interest, if any, shall not alter in any way Driggs' obligation to complete the performance of the requirements of this Consent Decree.

70.     <u>Non-Exclusivity of Remedy</u>.  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XIII (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Driggs' violation of this Decree or applicable law, including but not limited to an action against Driggs for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## X.     FORCE MAJEURE

71.     "Force majeure," for purposes of this Consent Decree, means any event arising from causes beyond the control of Driggs, of any entity controlled by Driggs, or of Driggs' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Driggs best efforts to fulfill the obligation.  Given the need to protect public health and welfare and the environment, the requirement that Driggs exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure, such that any delay or non-performance is, and any adverse effects of the delay or non-performance are, minimized to the greatest extent possible.  "Force majeure" does not include financial inability to perform any obligation under this Consent Decree.

72.     If any event occurs for which Driggs will or may claim a force majeure, Driggs shall provide notice by email to R10enforcement@epa.gov and the EPA contacts listed in Section XV.  The deadline for the initial notice is three days after Driggs first knew or should have known that the event would likely delay or prevent performance.  Driggs shall be deemed to know of any circumstance of which any contractor of, subcontractor of, or entity controlled by Driggs knew or should have known.

73.     If Driggs seeks to assert a claim of force majeure concerning the event, within 7 Days after the notice under Paragraph 72, Driggs shall submit a further notice to EPA that includes (a) an explanation and description of the event and its effect on Driggs' completion of the requirements of the Consent Decree; (b) a description and schedule of all actions taken or to be taken to prevent or minimize the delay and/or other adverse effects of the event; (c) if applicable, the proposed extension of time for Driggs to complete the requirements of the Consent Decree; (d) Driggs' rationale for attributing such delay to a force majeure [if it intends to assert such a claim]; (e) a statement as to whether, in the opinion of Driggs, such event may cause or contribute to an endangerment to public health or welfare or the environment; and (f) all available proof supporting any claim that the delay was attributable to a force majeure.

74.     Failure to submit a timely or complete notice or claim under Paragraphs 72 or 73 regarding an event precludes Driggs from asserting any claim of force majeure regarding that event, provided, however, that EPA may, in its unreviewable discretion, excuse such failure if it is able to assess to its satisfaction whether the event is a force majeure, and whether Driggs has exercised its best efforts, under Paragraph 71.

75.     After receipt of any claim of force majeure, EPA will notify Driggs of its determination whether Driggs is entitled to relief under Paragraph 71, and, if so, the excuse of, or

the extension of time for, performance of the obligations affected by the force majeure. An excuse of, or extension of the time for performance of, the obligations affected by the force majeure does not, of itself, excuse or extend the time for performance of any other obligation.

76.    If Driggs elects to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Driggs has the burden of proving that it is entitled to relief under Paragraph 71, that its proposed excuse or extension was or will be warranted under the circumstances, and that it complied with the requirements of Paragraphs 71–73. If Driggs carries this burden, the delay or non-performance at issue shall be deemed not to be a violation by Driggs of the affected obligation of this Consent Decree identified to EPA and the Court.

## XI.    DISPUTE RESOLUTION

77.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Driggs' failure to seek resolution of a dispute under this Section concerning an issue of which it had notice and an opportunity to dispute under this Section prior to an action by the United States to enforce any obligation of Driggs arising under this Decree precludes Driggs from raising any such issue as a defense to any such enforcement action.

78.    Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Driggs sends DOJ and EPA a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by

written agreement.  If the United States and Driggs cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 10 Days after the conclusion of the informal negotiation period, Driggs invokes formal dispute resolution procedures as set forth below.

79.     Formal Dispute Resolution.  Driggs shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending DOJ and EPA a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Driggs' position, and any supporting documentation relied upon by Driggs.

80.     The United States will send Driggs its Statement of Position within 45 Days of receipt of Driggs' Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position, and any supporting documentation relied upon by the United States.  The United States' Statement of Position is binding on Driggs, unless Driggs files a motion for judicial review of the dispute in accordance with the following Paragraph.

81.     Judicial Dispute Resolution.  Driggs may seek judicial review of the dispute by filing with the Court and serving on the United States a motion requesting judicial resolution of the dispute.  The motion (a) must be filed within 10 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph; (b) may not raise any issue not raised in informal dispute resolution pursuant to Paragraph 78, unless the United States raises a new issue of law or fact in the Statement of Position; (c) shall contain a written statement of Driggs' position on the matter in dispute, including any supporting factual data, analysis, opinion, or

documentation; and (d) shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

82.     The United States shall respond to Driggs' motion within the time period allowed by the Local Rules of this Court.  Driggs may file a reply memorandum, to the extent permitted by the Local Rules.

83.     <u>Standard of Review.</u>

a.     <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 81 pertaining to: the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position taken by the United States is not consistent with the Consent Decree or applicable law.

b.     <u>Other Disputes</u>. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 79, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the Objectives of the Consent Decree.

84.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Driggs under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment

shall be stayed pending resolution of the dispute as provided in Paragraph 66.  If Driggs does not

prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in

Section IX (Stipulated Penalties).

## XII.    INFORMATION COLLECTION AND RETENTION

85.    The United States and its representatives, including attorneys, contractors, and

consultants, shall have the right of entry into the WWTP and WCTS or any facility covered by

this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.    monitor the progress of activities required under this Consent Decree;

b.    verify any data or information submitted to the United States or the State

in accordance with the terms of this Consent Decree;

c.    obtain samples and, upon request, splits of any samples taken by Driggs or

its representatives, contractors, or consultants;

d.    obtain documentary evidence, including photographs and similar data; and

e.    assess Driggs' compliance with this Consent Decree.

86.    Upon request, Driggs shall provide EPA and the State or its authorized

representatives splits of any samples taken by Driggs.  Upon request, EPA shall provide Driggs

splits of any samples taken by EPA.

87.    Until 5 years after the termination of this Consent Decree, Driggs shall retain, and

shall instruct its contractors and agents to preserve, all non-identical copies of all documents,

records, or other information (including documents, records, or other information in electronic

form) in its or its contractors' or agents' possession or control, or that come into its or its

contractors' or agents' possession or control, and that relate in any manner to Driggs'

performance of its obligations under this Consent Decree.  This information-retention

requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Driggs shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

88. At the conclusion of the information-retention period provided in the preceding Paragraph, Driggs shall notify the United States and the State at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States [or the State], Driggs shall deliver any such documents, records, or other information to EPA [or the State]. Driggs may assert that certain documents, records, or other information is privileged under the attorney-client privilege, or any other privilege recognized by federal law. If Driggs asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Driggs. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

89. Driggs may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Driggs seeks to protect as CBI, Driggs shall follow the procedures set forth in 40 C.F.R. Part 2.

90. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable

federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Driggs to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

91.    This Consent Decree resolves only the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

92.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 91.  The United States further reserves all legal and equitable remedies to address any conditions if there is or may be an imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Driggs' WWTP and WCTS, whether related to the violations addressed in this Consent Decree or otherwise.

93.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the WWTP and WTCS or Driggs' violations, Driggs shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, claim preclusion (res judicata), issue preclusion (collateral estoppel), claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 91.

34

94.    This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Driggs is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Driggs' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Driggs' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 33 U.S.C. §§ 1251, et seq., or with any other provisions of federal, State, or local laws, regulations, or permits.  Application for construction grants, State Revolving Loan Funds, or any other grants or loans, or other delays caused by inadequate facility planning or plans and specifications on the part of Driggs shall not be cause for extension of any required compliance date in this Consent Decree.

95.    This Consent Decree does not limit or affect the rights of Driggs or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Driggs, except as otherwise provided by law.

96.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

97.    Nothing in this Consent Decree limits the rights or defenses available under Section 309(e) of the Clean Water Act, 33 U.S.C. § 1319(e), in the event that the laws of the State, as currently or hereafter enacted, prevent Driggs from raising the revenues needed to comply with this Decree.

## XIV.   COSTS

98.     The Parties shall bear their own costs of this action, including attorneys' fees,
except that the United States shall be entitled to collect the costs (including attorneys' fees)
incurred in any action necessary to collect any portion of the civil penalty or any stipulated
penalties due but not paid by Driggs.

## XV.   NOTICES

99.     Unless otherwise specified in this Decree, whenever notifications, submissions, or
communications are required by this Consent Decree, they shall be made in writing and sent by
registered mail, return receipt requested, or by email (with a preference for email), addressed as
follows:

As to DOJ by email (preferred):       eescdcopy.enrd@usdoj.gov

                                      Re: DJ # 90-5-1-1-12596

As to DOJ by mail:                    EES Case Management Unit
                                      Environment and Natural Resources Division
                                      U.S. Department of Justice
                                      P.O. Box 7611
                                      Washington, D.C.  20044-7611
                                      Re: DJ # 90-5-1-1-12596

As to EPA by email (preferred):    martich.tara@epa.gov and granatt.danielle@epa.gov

As to EPA by mail:                    Tara Martich
                                      U.S. EPA
                                      222 W. 7th Avenue, Box 19
                                      Anchorage, AK 99513

**As to Defendants:**

As to City of Driggs by email (preferred):    mayor@driggsidaho.org

As to City of Driggs by mail:         Mayor August Christensen
                                      60 S. Main St.
                                      P.O. Box 48
                                      Driggs, ID 83422
                                      mayor@driggsidaho.org

As to the State of Idaho by email (preferred):    brent.king@deq.idaho.gov;
Jess.Byrne@deq.idaho.gov; mary.ann.nelson@deq.idaho.gov

As to State of Idaho by mail:    Brent King
Deputy Attorney General
1410 N. Hilton, 2nd Floor
Boise, ID  83706-1255
Brent.King@deq.idaho.gov

Jess Byrne
Director
Idaho Department of Environmental Quality
1410 N. Hilton, 2nd Floor
Boise, ID  83706-1255
Jess.Byrne@deq.idaho.gov

100.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

101.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVI.    EFFECTIVE DATE

102.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Driggs hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date.  In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVII.  RETENTION OF JURISDICTION

103.    The Court shall retain jurisdiction over this case until termination of this Consent

Decree, for the purpose of resolving disputes arising under this Decree or entering orders

modifying this Decree, pursuant to Sections XI and XVIII, or effectuating or enforcing

compliance with the terms of this Decree.

## XVIII. MODIFICATION

104.    The terms of this Consent Decree, including any attached appendices, may be

modified only by a subsequent written agreement signed by all the Parties.  Where the

modification constitutes a material change to this Decree, it shall be effective only upon approval

by the Court.

105.    Any disputes concerning modification of this Decree shall be resolved pursuant to

Section XI (Dispute Resolution), provided, however, that, instead of the burden of proof

provided by Paragraph 83, the Party seeking the modification bears the burden of demonstrating

that it is entitled to the requested modification in accordance with Federal Rule of Civil

Procedure 60(b).

## XIX.  TERMINATION

106.    After Driggs has completed the requirements of Section VI (Compliance

Requirements), has thereafter maintained continuous satisfactory compliance with this Consent

Decree and Driggs' NPDES Permit for a period of two (2) years, has complied with all other

requirements of this Consent Decree, and has paid the civil penalty and any accrued stipulated

penalties as required by this Consent Decree, Driggs may serve upon the United States and the

State a Request for Termination, stating that Driggs has satisfied those requirements, together

with all necessary supporting documentation.

107.    Following receipt of Driggs' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Driggs has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

108.    If the United States does not agree that the Decree may be terminated, Driggs may invoke Dispute Resolution under Section XI.  However, Driggs shall not seek Dispute Resolution of any dispute regarding termination until 15 Days after service of its Request for Termination.

## XX.    PUBLIC PARTICIPATION

109.    This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XXI.    SIGNATORIES/SERVICE

110.    Each undersigned representative of Driggs, the State, and the Deputy Chief for the Environmental Enforcement Section of the Environment and Natural Resources Division of the Department of Justice identified on the DOJ signature page below, certifies that that person is

fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party that person represents to this document.

111.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXII.  INTEGRATION

112.    This Consent Decree, including deliverables that are subsequently approved pursuant to this Decree, constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements, and understandings, whether oral or written, concerning the subject matter of the Decree herein.

## XXIII. 26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

113.    For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21(b)(2), performance of Paragraphs 5, 13-43, 48-56, 85-88,  and Appendices A, B, C, is restitution, remediation, or required to come into compliance with law.

## XXIV. HEADINGS

114.    Headings to the Sections and Subsections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

## XXV.  FINAL JUDGMENT

115.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State, and Driggs.

## XXVI. APPENDICES

116.    The following Appendices are attached to and part of this Consent Decree:

"Appendix A" is the Schedule of Deadlines for Activated Sludge Process with Membranes WWTP (CD ¶ 34);

"Appendix B" is the Lagoon Monitoring and Sludge Management Plan;

"Appendix C" is the Collection System Monitoring Plan.

Dated and entered this __ day of _____, 2025

_____
JUDGE DAVID C. NYE

FOR THE UNITED STATES OF AMERICA:

<u>1/6/25</u>
Date

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

Susan M. Akers
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice


<u>/s/ Joanna Citron Day</u>
JOANNA CITRON DAY
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611

JOSHUA D. HURWIT
ID State Bar No. 9527
United States Attorney
District of Idaho


CRISTINE G. ENGLAND
ID State Bar No. 11390
Assistant United States Attorney
District of Idaho
1290 West Myrtle St., Suite 50
Boise, ID 83702
TELEPHONE:  (208) 334-1211
FACSIMILE:  (208) 334-9375
Email:  Christine.England@usdoj.gov

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:


BEVERLY LI  Digitally signed by
            BEVERLY LI
            Date: 2024.12.23
            14:54:41 -08'00'

_____          _____
Date                     BEVERLY LI
                         Regional Counsel
                         United States Environmental Protection Agency
                         Region 10
                         1200 Sixth Avenue, Suite 155
                         Seattle, Washington 98101


                         OF COUNSEL:
                         DANIELLE GRANATT
                         Assistant Regional Counsel
                         U.S. Environmental Protection Agency
                         Region 10
                         1200 Sixth Avenue, Suite 155
                         Seattle, Washington 98101-3140

FOR THE FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY CONTINUED:


_____          JOSEPH        Digitally signed by
Date                     THEIS         JOSEPH THEIS
                                       Date: 2024.12.20
                                       11:00:46 -05'00'
                         JOSEPH G. THEIS
                         Acting Director
                         Water Enforcement Division
                         Office of Civil Enforcement
                         Office of Enforcement and Compliance Assurance
                         United States Environmental Protection Agency
                         1200 Pennsylvania Avenue, N.W.
                         Washington, DC 20460


                         OF COUNSEL:
                         MEGAN KNIGHT
                         Attorney-Advisor
                         Municipal Enforcement Branch
                         Water Enforcement Division
                         Office of Civil Enforcement
                         Office of Enforcement and Compliance Assurance
                         U.S. Environmental Protection Agency
                         1200 Pennsylvania Ave., NW
                         Washington, DC 20460
                         Telephone: (202) 564-8942
                         Email: Knight.Megan@epa.gov

                         *Attorneys for Plaintiffs*

12.17.24
_____
Date

Mayor August Christensen
60 S. Main St.
P.O. Box 48
Driggs, ID 83422
mayor@driggsidaho.org

*For Defendant City of Driggs, Idaho*

_Dec. 20, 2024_
Date

Jess Byrne
Director
Idaho Department of Environmental Quality
1410 N. Hilton, 2nd Floor
Boise, ID  83706-1255
Jess.byrne@deq.idaho.gov

*For Defendant State of Idaho*

**Appendix A:  Schedule of Deadlines for Activated Sludge Process
With Membranes WWTP (CD ¶ 34)**

| CD ¶ 34 Requirements | Deadline | CD ¶ Reference(s) |
|---|---|---|
| Submission of Preliminary Design | April 24, 2025 | ¶ 34(a) |
| Submission of 60% Design | April 24, 2025 | ¶ 34(b) |
| Submission of 90% Design | August 7, 2025 | ¶ 34(c) |
| Notice of Financial plans approved; | January 15, 2026 | ¶ 34(d) |
| Submission of 100% Design | January 15, 2026 | ¶ 34(d) |
| Submission of Lagoon Utilization Plan | January 15, 2026 | ¶ 34(e), ¶ 29 |
| Submission of Staffing Plan | January 15, 2026 | ¶ 34(f), ¶¶ 37–39 |
| Submission of Contractor Notice to Proceed | June 9, 2026 | ¶ 34(g) |
| Notice of completion for conversion of portion of lagoon to equalization basin | April 30, 2027 | ¶ 34(h) |
| Notice of completion of installation of new blowers | May 30, 2027 | ¶ 34(i) |
| Notice of construction completion of biosolids handling facility associated with Activated Sludge Process with Membranes WWTP | May 14, 2028 | ¶ 34(j) |
| Submission of Sewage Sludge Management Plan | May 14, 2028 | ¶ 34(k), ¶ 30 |
| Submission of confirmed list of staff positions in place for operation of Activated Sludge Process with Membranes WWTP | October 18, 2028 | ¶ 34(l) |
| Notice of completion of construction of Activated Sludge Process with Membranes WWTP | December 15, 2028 | ¶ 34(m) |

| CD ¶ 34 Requirements | Deadline | CD ¶ Reference(s) |
|---|---|---|
| Submission of Completed of Operation and Maintenance Plan | December 15, 2028 | ¶ 34(n) |
| Submission of updated QAP | December 15, 2028 | ¶ 34(o), ¶ 40 |
| Notice of beginning of performance testing for Activated Sludge Process with Membranes WWTP (fully online) | January 10, 2029 | ¶ 34(p) |
| Notice of continuous operation of Activated Sludge Process with Membranes WWTP in compliance with NPDES Permit | September 1, 2029 | ¶ 34(q) |
| Notice of management of sludge from existing lagoons in accordance with Sewage Sludge Management Plan | September 30, 2029 | ¶ 34(r), ¶ 32 |



# APPENDIX B
# LAGOON MONITORING AND
# SLUDGE MANAGEMENT PLAN

DATED:  November 26, 2024
Created by: Jay T. Mazalewski



Table of Contents:

I.      Summary and Objectives

II.     Annual Operations and Maintenance

III.    Warm Weather Operations

IV.     Cold Weather Operations

V.      Odor Control

VI.     Sludge Survey Procedure

VII.    Sludge Level Evaluation

 208-354-2362 ext 2115
M-TH 8:30am - 5pm
F 8:30am - 1pm

 jmaz@driggsidaho.org
DRIGGSIDAHO.ORG

 60 South Main Street
PO Box 48
Driggs, ID 83422

1



**CITY OF DRIGGS**
**PUBLIC WORKS DEPARTMENT**

I.        Summary and Objectives:

The Teton Valley Regional Water Reclamation Facility utilizes and operates lagoons as aerobic sludge holding ponds, in accordance with the approved WRF facility upgrade in 2013.  Lagoon operation is in compliance with IDAPA Rules 58.01.16.490.02.a.iii.(2) and generally accepted engineering practices identified in the 10 State Standards Chapter 85.  The city currently operates two lagoons that are each divided into two cells.  Supernatant (excess water) is decanted from the west lagoon via pump station and integrated/mixed into the influent stream after the initial screening (Huber step screens).

This document is intended to be utilized by the licensed wastewater treatment responsible charges operators and staff to guide the management of the sludge in the lagoons.  The City will develop detailed SOPs and update detailed SOPs, the QAP, and O&M manuals, as needed, to further implement this Lagoon Monitoring and Sludge Management Plan.  Attached to this document is the June 2023 Lagoon Sludge Volume Summary prepared by Forsgren Engineering to be used as the baseline sludge levels and assist in the operator decision making.

II.        Operations and Maintenance:

1.        Measure sludge depths along gridlines 3 & 8, shown on Figures 1 and 2, between September 1 and November 1.  This can be self-performed or performed by a contractor.  Sludge survey shall use the same datum as the 2023 Sludge Volume Summary (NAVD84).
   a.   By December 31, update capacity calculations and remaining capacity timeline.

2.        Once per month test lagoon supernatant from the lagoon return pump wet well for BOD, TSS, Ammonia, pH, Temperature, and E. coli.  Tests will be taken the same day as the 2x month effluent testing.
   a.   Lagoon return pump will be running during the test and a minimum of 10 minutes prior to testing.
   b.   Responsible charge operator will review test results and adjust operations to ensure lagoon supernatant is not negatively affecting operations.

3.        Lagoons shall maintain a freeboard of 18-inches.
   a.   Verification of freeboard will be part of the weekly maintenance schedule.
   b.   If freeboard is not maintained, responsible charge operator shall adjust operations to ensure adequate freeboard is maintained.


208-354-2362 ext 2115
M-TH 8:30am - 5pm
F 8:30am - 1pm


jmaz@driggsidaho.org
DRIGGSIDAHO.ORG


60 South Main Street
PO Box 48
Driggs, ID 83422

2



**CITY OF DRIGGS**
PUBLIC WORKS DEPARTMENT

III.    <u>Warm Weather Operations (typically April through November)</u>:

    1.    Apply bio-augmentation/sludge reduction products to both lagoons (all cells). Bio-augmentation should occur when lagoon temperatures are 55 F (12.8 C) or greater. Bio-augmentation shall be applied per manufacturer recommendations.

    2.    After or as ice melts off the surface of the lagoon:
        a.   Check and adjust air valves to increase air flow to areas of accumulated sludge identified by the sludge survey.
        b.   Turn on a second blower to increase dissolved oxygen and improve mixing of any sludge settled during the previous winter. Recommend a minimum of one week of two blowers running to mix any accumulated sludge.

    3.    Maintain oxygen concentration between 1.0 and 2.0 mg/l in accordance with 10 State Standards Chapter 85.5.

IV.    <u>Cold Weather Operations (typically November through March)</u>:

    1.    Check and adjust air valves to increase air flow to areas of accumulated sludge identified by the sludge survey, prior to ice over. Air adjustment may not be feasible during winter ice conditions.

    2.    Maintain oxygen concentration between 1.0 and 2.0 mg/l in accordance with 10 State Standards Chapter 85.5, prior to ice over. Dissolved oxygen testing may not be feasible during winter ice conditions.

V.    <u>Odor Control</u>:

Odors will be controlled throughout the year per IDAPA Rules and 10 State Standards recommendations. Lagoon odor issues typically occur during the spring when lagoon water warms and biological activity increases. The following procedures will be performed in an attempt to mitigate odors:

    1.    In the event odor complaints are received, record odor complaint in the operator logbook located in the WWTP office.

    2.    Implement some or all of the following measures:
        a.   Sludge management basins will maintain supernatant sludge separation with a maximum sludge volume of 75%; sludge management is triggered when the average sludge volume

 208-354-2362 ext 2115
M-TH 8:30am - 5pm
F 8:30am - 1pm

 jmaz@driggsidaho.org
DRIGGSIDAHO.ORG

 60 South Main Street
PO Box 48
Driggs, ID 83422

3



exceeds 70% based on the sludge inventory (in accordance with recommended 10 State Standards for Wastewater Facilities chapter 80 article 85.3).

    b. Increase aeration to cells/lagoons; this may be achieved by

        i. Adjusting air valves to increase air to specific areas and/or

        ii. Turning on a second blower.

    c. Apply odor control product to the surface of lagoon(s).  Rates of application to be determined by operator and manufacturer recommendations to mitigate offsite odors.

VI.    <u>Sludge Survey</u>:

A sludge survey will be completed annually between September 1 and November 1 to determine current sludge levels, volumes, and accrual rates of the sewage sludge in the lagoons, and if any actions are needed.

The sludge survey can be self-performed or performed by a contractor based on staffing availability as determined by the operator.  By August 1 of each calendar year, Driggs will decide whether it plans to complete the sludge survey using available staff or a contractor.  Sludge survey shall use the same datum as the 2023 Sludge Volume Summary.

1. Sludge depths will be measured in 50' increments along gridlines 3 and 8.  Locate and mark 50' increments along the berm between the lagoons for future reference.

2. Sludge depths should be compared with the June 2023 Lagoon Sludge Volume Summary.  Note the water surface elevation may be different.

3. Use sludge judge to determine depth of sludge below water surface, each location should correlate with 50' increments marked in step 1.

4. Update the consolidate sludge and water surface profiles (Figure 2) at Grid Lines 3 and 8 with recorded data.

 208-354-2362 ext 2115
M-TH 8:30am - 5pm
F 8:30am - 1pm

 jmaz@driggsidaho.org
DRIGGSIDAHO.ORG

 60 South Main Street
PO Box 48
Driggs, ID 83422

4





Figure 1

 208-354-2362 ext 2115
M-TH 8:30am - 5pm
F 8:30am - 1pm

 jmaz@driggsidaho.org
DRIGGSIDAHO.ORG

 60 South Main Street
PO Box 48
Driggs, ID 83422

5





Figure 2


208-354-2362 ext 2115
M-TH 8:30am - 5pm
F 8:30am - 1pm

jmaz@driggsidaho.org
DRIGGSIDAHO.ORG


60 South Main Street
PO Box 48
Driggs, ID 83422

6



**CITY OF DRIGGS**
**PUBLIC WORKS DEPARTMENT**

VII.    <u>Sludge Level Evaluation and Recommended Actions</u>:

10 State Standards Chapter 85.31 provides recommendations regarding operations for aerated sludge digestion vessels. While the existing lagoons are not optimized aerated sludge digesters, they are functioning as aerated sludge holding basins and the operations group is operating them in general conformance to this referenced standard. According to the June 2023 Lagoon Sludge Volume Summary, the Teton Valley Regional Water Reclamation Facility aerated sludge holding lagoons require action when the sludge volume reaches 70% to allow time for action prior to exceeding a maximum sludge volume of 75% (in accordance with recommended 10 State Standards for Wastewater Facilities chapter 80 article 85.3).

Cell 1 Sludge Depth: 69 inches = 70% Full
Cell 2 Sludge Depth: 69 inches = 70% Full
Cell 3 Sludge Depth: 71 inches = 70% Full
Cell 4 Sludge Depth: 71 inches = 70% Full

1. Determine average sludge depths in each cell.

2. If average sludge depth of any cells corresponds to a sludge volume of 70% or greater, or where sludge beaching is present, the following steps will be taken for that cell:
   a. Determine if sludge capacity exists in an adjacent cell. If so, move sludge to the adjacent until both cells are under 70% capacity.
   b. If all cells are at capacity or sludge is unable to be moved between cells. Sludge from the cell(s) will be removed mechanically and disposed of according to federal and state requirements according to the process and timeline included in Paragraph VII.2.c below. Sludge will be removed to ensure a minimum of 50% capacity (see sludge depths above). This process will require city council approval and must follow state procurement laws. The estimated cost of full sludge removal from each lagoon is around $1,000,000.
   c. By December 15th, if sludge volumes indicate that sludge must be removed from any of the lagoons, the City will develop and implement a work plan, including the estimated sludge volumes to be removed. The City will develop the work plan no later than December 15th. The work plan shall indicate whether the City will use or dispose of sewage sludge, in accordance with the CWA, including the requirements of 40 C.F.R. Parts 258 and 503. Sludge removal will be conducted following selection of a general contractor and commence as quickly as environmental conditions allow for outdoor dewatering activities. This work will be completed no later than 18 months from the date the work plan is developed.

3. Lagoon Monitoring and Sludge Management Plan indicating that development of a lagoon sludge handling plan or plan to convert the lagoons for long term use will occur at a later date and in accordance with the terms of the consent decree.

 208-354-2362 ext 2115
M-TH 8:30am - 5pm
F 8:30am - 1pm

 jmaz@driggsidaho.org
DRIGGSIDAHO.ORG

 60 South Main Street
PO Box 48
Driggs, ID 83422

7



# APPENDIX C
# COLLECTION SYSTEM
# MONITORING/SAMPLING PLAN

DATED:  November 26, 2024
Created by: Jay T. Mazalewski



## CITY OF DRIGGS
### PUBLIC WORKS DEPARTMENT

I.  <u>Summary and Objectives</u>:

The Teton Valley Regional Water Reclamation Facility (WWTP) NPDES permit requires the "Control of Undesirable Pollutants and Industrial Users" as shown below.  This document is intended to help protect the current and future WWTP and for the city to comply with its NPDES permit by continuing to evaluate the collection system.  This document is designed to assist the operator in identifying industrial users who may cause the city to violate Part II.C and help ensure the WWTP remains in compliance with Part II.C of the permit.  The City will develop detailed SOPs and update detailed SOPs, the QAP, and O&M manuals, as needed, to further implement this Collection System Monitoring/Sampling Plan.   Where dischargers are identified exceeding constituent trigger limits (See Consent Decree Paragraphs 17 and 18 and Section III.4.a of this Collection System Monitoring/Sampling Plan for trigger limits), discharger will be required to submit a corrective action plan to the city within two weeks of exceedance.

*Part II.C of the NPDES Permit: Control of Undesirable Pollutants and Industrial Users*

*1.   The permittee must require any industrial user discharging to its treatment works to comply with any applicable requirements of 40 C.F.R. Parts 403 through 471.*

*2.   The permittee must not allow introduction of the following pollutants into the POTW:*

*a)  Pollutants which create a fire or explosion hazard in the POTW, including, but not limited to, waste streams with a closed cup flashpoint of less than 140 degrees Fahrenheit (°F) or 60 degrees Centigrade (°C) using the test methods specified in 40 C.F.R. § 261.21.*

*b)  Pollutants which will cause corrosive structural damage to the POTW, but in no case Discharges with pH lower than 5.0, unless the POTW is specifically designed to accommodate such Discharges.*

*c)  Solid or viscous pollutants in amounts which will cause obstruction to the flow in the POTW resulting in Interference.*

*d)  Any pollutant, including oxygen demanding pollutants (BOD, etc.) released in a Discharge at a flow rate and/or pollutant concentration which will cause Interference with the POTW.*

*e)  Heat in amounts which will inhibit biological activity in the POTW resulting in Interference, but in no case heat in such quantities that the temperature at the POTW Treatment Plant exceeds 40 °C (104 °F) unless the Director of the Office of Water and Watersheds, upon request of the POTW, approves alternate temperature limits.*

 208-354-2362 ext 2115
M-TH 8:30am - 5pm
F 8:30am - 1pm

 jmaz@driggsidaho.org
DRIGGSIDAHO.ORG

 60 South Main Street
PO Box 48
Driggs, ID 83422

1



*f)  Petroleum oil, nonbiodegradable cutting oil, or products of mineral oil origin in amounts that will cause interference or pass through.*

*g)  Pollutants which result in the presence of toxic gases, vapors, or fumes within the POTW in a quantity that may cause acute worker health and safety problems.*

*h)  Any trucked or hauled pollutants, except at discharge points designated by the POTW.*

*i)  Any pollutant which causes "Pass Through" or "Interference." See Part VI of the permit*

II.    <u>New Industrial Users</u>:
The City of Driggs will monitor potential sources of undesirable pollutants by monitoring new non-residential connections with the Industrial User Survey form.

1.  The City of Driggs and City of Victor will require all new non-residential building permits to complete the industrial user survey, prior to issuance of a building permit.

2.  The City of Driggs and City of Victor will require all new business registrations to complete the industrial user survey, prior to issuance of a business registration.  Renewal business registrants will be required to disclose any changes to operations that would affect wastewater quantity or quality.

3.  Completed surveys will be reviewed by each city to determine if additional information is required. Surveys should be reviewed by the Public Works Director's or the WWTP Responsible Charge Operator.

4.  Completed surveys will be evaluated for compliance with the adopted pre-treatment ordinance and NPDES Permit Part II.C.

  a.  Facilities/businesses that are in the following categories may be eliminated from further evaluations:
    i.  Facility operation does not manufacture or produce a product on site and thus does not generate wastewater other than domestic use.
    ii.  Facility operation is a dry process and does not generate wastewater other than domestic use.
    iii.  Facility discharges non-domestic (non-industrial) wastewater only.  Examples may include theaters, beauty shops, barber shops, retail stores, offices, and gas stations that are not also service stations.

 208-354-2362 ext 2115
M-TH 8:30am - 5pm
F 8:30am - 1pm

 jmaz@driggsidaho.org
DRIGGSIDAHO.ORG

 60 South Main Street
PO Box 48
Driggs, ID 83422

2



    iv.   Facility discharge likely has minimal impact on the collection system or the treatment plant.  Examples may include multi-family housing units, hotels, and motels.

  b.  If the survey indicates the use may produce undesirable pollutants, the cities of Driggs and Victor will;
      i.  Conduct a follow up interview and site visit with the user to gain a better understanding of the potential waste stream; and
     ii.  Consider (on a case-by-case basis) requiring user to monitor and test effluent

5.  City of Victor will quarterly submit copies of new Industrial User Surveys to the Driggs City Clerk for review by the Driggs Public Works Director or Responsible Charge Operator for the wastewater treatment facility.  Additionally, Victor will notify City of Driggs of any new significant industrial users prior to issuance of building permit of business registration.

6.  The City of Driggs public works department will maintain a file of industrial user respondents and their completed surveys, this list will be updated annually, at a minimum.

III.   <u>Collection System Testing & Monitoring:</u>
Monitoring the collection system at specific locations quarterly will inform the operator if seasonal fluctuations occur in the wastewater strength and in what service area they occur.  This section outlines the collection system concentration monitoring program.

1.  Testing will occur in February, May, July, and November.  These months were chosen to best represent the seasonal fluctuations observed in the collection area.

2.  The following locations will be tested.  These locations were chosen as they are logical collection nodes, have flow meters, and are accessible year-round.  Testing locations a, b and c capture all of the influent coming to the treatment facility.

  a.  <u>Driggs Huntsman Lagoon Lift Station - 1250 West Bates Road Driggs</u>:  This lift station discharges directly to the treatment plant.  The collection area includes the Tributary Subdivision, Portions of Shoshoni Plains subdivision, areas west of Highway 33 and North of West Little Avenue, and the city airport.
  b.  <u>Driggs Main Lift Station – 60 South Main St Driggs</u>:  This lift station discharges directly to the treatment plant.  The collection area includes areas east of Highway 33 from Ross Ave to Johson Ave, including all of Ski Hill Road.  This collection area contains the majority of the original townsite.
  c.  <u>Driggs South Lift Station -1480S 500W Driggs</u>:  This lift station discharges directly to the treatment plant.  The collection area includes all of the City of Victor effluent, including their

 208-354-2362 ext 2115
M-TH 8:30am - 5pm
F 8:30am - 1pm

 jmaz@driggsidaho.org
DRIGGSIDAHO.ORG

 60 South Main Street
PO Box 48
Driggs, ID 83422

3



satellite systems and two of the City of Driggs satellite systems (satellite systems are connections to the collection system that are outside of the city limits).

    d. <u>Victor North Lift Station 6700S 500W</u>:  This lift station discharges to the Driggs South Lift Station.  The collection area includes all of the City of Victor.

3.      Tests shall be "grab" sample type tests.  Samples will be tested for pH, Temperature, BOD, TSS and Ammonia (note these locations are outside and subject to cold weather temperatures).  BOD, TSS and Ammonia samples will be sent to a certified lab, pH and temperature will be recorded at the time of sampling by the sampler.

4.      Test results will be recorded and evaluated against the requirements in NPDES Permit Part II. C.

    a.  If the test indicate undesirable pollutants at concentrations above the criteria listed below, which represents the 2-times the design parameters for the current facility, the City will complete the actions as described in III.4.a.i and III.4.a.ii below.  When the facility is upgraded and if this document is still applicable the criteria shall be adjusted to 2-times the upgraded facility design criteria.

        BOD        > 500 mg/L;
        TSS         > 400 mg/L;
        Ammonia  > 70 mg/L;
        pH          < 5 or >10;

      i.  The location will be re-tested at the soonest practical time but not later than seven days after the city receives the initial results.

     ii.  If re-test results confirm undesirable pollutants, City Engineer will determine if the increased loading is detrimental to the treatment works process or equipment and if there is a potential for permit violation.  If the second sample result indicates levels above the trigger levels, the city will evaluate and address the potential source.  The City will develop a standard operating procedure for how to determine and address collection system limit violations.

IV.     <u>City of Driggs - Effluent Monitoring</u>:

Monitoring the collection system effluent (also the known as the influent at wastewater treatment facility) for Oil and Grease will occur in quarterly at the wastewater treatment facility as outlined in the  Consent Decree.

1.      If the average of two quarterly test results indicates Oil and Grease at concentrations above the criteria listed below;

        Oil and Grease     > 100 mg/L;

 208-354-2362 ext 2115
M-TH 8:30am - 5pm
F 8:30am - 1pm

 jmaz@driggsidaho.org
DRIGGSIDAHO.ORG

 60 South Main Street
PO Box 48
Driggs, ID 83422

4

**CITY OF DRIGGS**
**PUBLIC WORKS DEPARTMENT**

    a.   Oil and Grease will be added to the list of undesirable pollutants tested in above in Collection System Testing and Monitoring Section III.4 at a concentration of:

               Oil and Grease       >150 mg/l

    b.   Be subject to the conditions outlined in Collection System Testing and Monitoring section of the Consent Decree (see Consent Decree Paragraphs 16–20).

V.       <u>City of Victor Effluent Monitoring:</u>

Monthly monitoring of the City of Victor effluent will assist both cities in understanding impact to the treatment facility. The Driggs South Lift Station will be used as a representative sample location for the City of Victor effluent.

1.      Effluent from the City of Victor will be sampled 2 times/month, aligning with the 2 times monthly sampling at the WWTP. Samples shall be sent to a lab for BOD, TSS, and Ammonia. pH and temperature will be recorded in the field by the sampler.


208-354-2362 ext 2115
M-TH 8:30am - 5pm
F 8:30am - 1pm


jmaz@driggsidaho.org
DRIGGSIDAHO.ORG

60 South Main Street
PO Box 48
Driggs, ID 83422

5





208-354-2362 ext 2115
M-TH 8:30am - 5pm
F 8:30am - 1pm

jmaz@driggsidaho.org
DRIGGSIDAHO.ORG

60 South Main Street
PO Box 48
Driggs, ID 83422

6



# CITY OF DRIGGS
## PUBLIC WORKS DEPARTMENT



Victor North LS:
Collects all flow from
City of Victor



208-354-2362 ext 2115
M-TH 8:30am - 5pm
F 8:30am - 1pm

jmaz@driggsidaho.org
DRIGGSIDAHO.ORG

60 South Main Street
PO Box 48
Driggs, ID 83422

7