Katherine L. Matthews, Colorado State Bar No. 53372
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
999 18th Street, Suite 600
North Terrace
Denver, CO 80202
Phone: (303) 844-1365
Fax: (303) 844-1350
Email: katherine.matthews@usdoj.gov

Justin D. Whatcott, Idaho State Bar No. 6444
Acting United States Attorney
Christine G. England, Idaho State Bar No. 11390
Assistant United States Attorney
District of Idaho
1290 W. Myrtle St. Suite 500
Boise, ID 83702-7788
Telephone: (208) 334-1211
Email: Christine.England@usdoj.gov

*Attorney for Plaintiff, United States of America*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE UNITED STATES OF AMERICA<br><br>        Plaintiff,<br><br>        v.<br><br>CITY OF DRIGGS, IDAHO and<br><br>STATE OF IDAHO,<br><br>        Defendants. | Case No. 4:22-cv-00444-DCN<br><br>**UNOPPOSED MOTION TO ENTER CONSENT DECREE** |

Plaintiff the United States of America respectfully moves this Court for entry of the

Consent Decree that was lodged with this Court on January 15, 2025. The Consent Decree

1
**UNOPPOSED MOTION TO ENTER CONSENT DECREE**

resolves Plaintiff's claims filed on behalf of the United States Environmental Protection Agency ("EPA") on October 24, 2022 [Dkt. 1], as amended on January 15, 2025 [Dkt. 27] ("Complaint"), alleging that the City of Driggs, Idaho ("the City") violated the Clean Water Act ("CWA") by discharging pollutants in excess of the conditions and limitations established in the City's National Pollutant Discharge Elimination System Permit ("NPDES Permit") issued under Section 402 of the CWA, 33 U.S.C. § 1342.

The United States published notice of lodging of the proposed Consent Decree in the Federal Register on January 22, 2025. *See* 90 Fed. Reg. 7709 (Jan. 22, 2025); *see also* 28 C.F.R. § 50.7; Consent Decree ¶ 109 [Dkt. 29]. The notice described the principal terms of the settlement and invited the public to submit comments on the settlement for a period of thirty days. During this time, a copy of the proposed Decree was available on the U.S. Department of Justice's website. The United States received three sets of comments, which are attached as Exhibit 1. Specific responses to the complete set of public comments, organized by subject matter, are provided in the Response to Public Comments, which is attached to this Memorandum as Exhibit 2.

Pursuant to Paragraph 109 of the proposed Consent Decree, the United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or circumstances indicating that the Consent Decree is inappropriate, improper, or inadequate. The City has signed and fully approved the Consent Decree and has consented to its entry without further notice. Consent Decree ¶ 109. After carefully reviewing and considering each comment received, the United States has concluded that none of the comments provides a basis for the United States to withdraw its consent to the settlement or for this Court to

**UNOPPOSED MOTION TO ENTER CONSENT DECREE**

disapprove of the settlement. As set forth below, the Consent Decree is fair, reasonable, in the public interest, and consistent with the CWA. Accordingly, the United States respectfully requests that this Court sign (at page 41) and enter the Consent Decree as a final order of the Court.

## BACKGROUND

### A. The Clean Water Act

The objective of the CWA is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The CWA establishes a goal to eliminate the discharge of pollutants into navigable waters. 33 U.S.C. § 1251(a)(1). Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" except in compliance with a NPDES permit issued by EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342. Section 402 of the CWA, 33 U.S.C. § 1342, provides authority for the EPA Administrator to issue NPDES permits for the discharge of any pollutant, consistent with other provisions of the CWA. Such permits allow the discharge of pollutants subject to the terms and conditions set forth therein, including effluent limits, sampling requirements, and reporting requirements. 33 U.S.C. §§ 1311, 1318, 1342(a)(2). Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the EPA Administrator to commence a civil action to obtain appropriate relief, including a permanent or temporary injunction, when any person violates any condition or limitation in a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, or any order issued pursuant to CWA Section 309(a), 33 U.S.C. § 1319(a).

Pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b), the State received EPA approval for its program on June 5, 2018. Compl. ¶ 18 [Dkt. 27]. Thus, the City's NPDES Permit

**UNOPPOSED MOTION TO ENTER CONSENT DECREE**

was originally issued by EPA and as of June 5, 2018, is administered by the State. EPA retains concurrent enforcement authority with the State pursuant to Section 402(i) of the CWA, 33 U.S.C. § 1319(i). The City, as owner and operator of the wastewater treatment plant ("WWTP") is subject to the terms and conditions of its NPDES Permit, originally issued by EPA on November 4, 2010, which became effective on January 1, 2011, and was administratively extended until the effective date of the new NPDES Permit issued by the State, through Idaho Department of Environmental Quality. Compl. ¶¶ 5–7, 23 [Dkt. 27]. The City's WWTP serves a population of approximately 1,924 within the City itself and accepts sewage from the City of Victor ("Victor"), and various unincorporated portions of Teton County, pursuant to an inter-city agreement, for a total service population of 5,573. *Id.* ¶ 8. The WWTP accepts both domestic sanitary waste and wastewater from commercial establishments. *Id.* ¶ 7.

### B. Plaintiff's Claims

The Complaint alleges that the City violated several provisions of its NPDES Permit requirements between July 2017 and July 2022, including: (1) approximately 3,237 effluent limit violations for ammonia, biological oxygen on demand, pH, and *E. coli*; (2) failure to collect *E. coli* samples at the required frequency; (3) failure to comply with quality assurance/quality control and chain-of-custody procedures for sampling; (4) failure to implement required injunctive relief and comply with deadlines in the 2018 Compliance Order on Consent between the City and EPA; (5) failure to comply with NPDES Permit recording requirements for sampling; and (6) failure to use correct test procedures for certain sampling. Compl. ¶¶ 32–62, Compl. App. A [Dkt. 27].

### C. The Proposed Consent Decree

The most substantial injunctive relief requirements under the proposed Consent Decree are the City's upgrades to the WWTP according to design, funding, and construction deadlines, resulting in compliance with the City's NPDES Permit by September 1, 2029. Consent Decree ¶ 34, App. A. Under the proposed Consent Decree, the City will also implement injunctive relief within its collection system, including: (1) sampling industrial user discharges; (2) sampling quarterly at locations identified in its Collection System Monitoring Plan for at least two years; and (3) sampling influent at the WWTP quarterly. Consent Decree ¶¶ 14–19, App. C. The City will continue to manage sources of inflow and infiltration in the collection system and annually identify and repair sources of inflow and infiltration that significantly impact the WWTP. Consent Decree ¶ 35.

The proposed Consent Decree also requires the City to implement injunctive relief to manage its sewage sludge lagoons, including monitoring the volume of sewage sludge and sampling effluent from its lagoons, as well as preparing and submitting plans for management of the sewage sludge once the City has upgraded its WWTP. Consent Decree ¶¶ 27, 29–30, App. B. Finally, the City will pay $400,000 in civil penalties to the United States. Consent Decree ¶ 9.

### D. Public Comment Period

Pursuant to 28 C.F.R. § 50.7, the United States published a notice of lodging of the Consent Decree in the Federal Register, *see* 90 Fed. Reg. 7709 (Jan. 22, 2025), and public comments were accepted for thirty days following the publication of the notice. The United States received three sets of comments on the proposed Consent Decree, which are discussed below.

**STANDARD OF REVIEW**

Approval of a consent decree is within the informed discretion of the Court. *United States v. Oregon,* 913 F.2d 576, 580 (9th Cir. 1990); *SEC v. Randolph,* 736 F.2d 525, 529 (9th Cir. 1984). That discretion generally should be exercised in favor of settlement of litigation. *See Donovan v. Robbins*, 752 F.2d 1170, 1177 (7th Cir. 1985); *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999); *see also United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990).

"The Court may approve a proposed consent decree if it is procedurally and substantively fair, reasonable, in the public interest, and consistent with the policies of the underlying statute." *United States v. J.R. Simplot Co*., No. 1:23-cv-00322, 2024 WL 4545067, at *2 (D. Idaho Oct. 22, 2024) (citing *United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 743 (9th Cir. 1995)); *United States v. Aerojet General Corp.*, 606 F.3d 1142, 1152 (9th Cir. 2010); *Nu-West Mining Inc. v. United States*, No. 4:CV–09–431, 2013 WL 828191, at *2 (D. Idaho March 6, 2013) (citing *Aerojet*, 606 F.3d at 1152).

Several factors guide the Court's inquiry as to whether the proposed Consent Decree is fair, reasonable, advances the public interest, and is consistent with the statutory purposes of the underlying statue. *J.R. Simplot Co.,* 2024 WL 4545067, at *2 –*4. The court "should be guided by the general principle that settlements are encouraged." *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999); *see also Cannons Eng'g Corp.*, 899 F.2d at 84; *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979). The consent decree is a "highly useful tool for government agencies," for it "maximizes the effectiveness of limited law enforcement resources" by permitting the government to obtain compliance with the law without lengthy litigation. *United States v. City of Jackson*, 519 F.2d 1147, 1151 (5th Cir. 1975). The balancing of

**UNOPPOSED MOTION TO ENTER CONSENT DECREE**

competing interests affected by a proposed consent decree to which the United States is a party "must be left, in the first instance, to the discretion of the Attorney General." *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981). This presumption in favor of settlement "is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA which enjoys substantial expertise in the environmental field." *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991) (citation omitted); *see also Randolph*, 736 F.2d at 529 (noting that a court "should pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment."). "The Court must either accept or reject the decree as submitted; it does not have the authority to modify the decree." *United States v. J. R. Simplot Co.*, No. 1:15-cv-562, 2016 WL 1446132, at *1 (D. Idaho Apr. 12, 2016) (citing *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 630 (9th Cir. 1982)). As the Supreme Court has also noted, "sound policy would strongly lead us to decline . . . to assess the wisdom of the Government's judgment in negotiating and accepting the . . . consent decree, at least in the absence of any claim of bad faith or malfeasance on the part of the Government in so acting." *Sam Fox Publ'g Co. v. United States*, 366 U.S. 683, 689 (1961). Thus, where an agency committed to the furtherance of the public interest has negotiated an agreement, there is a presumption of validity.

## ARGUMENT

For the reasons set forth below, the proposed Consent Decree is procedurally fair, substantially fair and reasonable, serves the public interest, and is consistent with the statutory purpose of the CWA.

    A.    **The Proposed Consent Decree is Procedurally Fair.**

"[O]nce the court is satisfied that the decree was the product of good faith, arms-length

negotiations, a negotiated decree is presumptively valid." *Oregon*, 913 F.2d at 581; *United States v. Intalco Alum. LLC*, No. 2:24-cv-01066, 2024 WL 4491542, at *2 (W.D. Wash. Oct. 15, 2024). To determine procedural fairness, "the court must look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." *Arizona ex rel. Woods v. Nucor Corp.*, 825 F. Supp. 1452, 1456 (D. Ariz. 1992) (internal quotations omitted).

The negotiations in this matter were procedurally fair. Here, all parties were represented by experienced counsel and individuals with technical expertise. Their good faith, arms-length negotiation lasted for over a year and a half and included regular virtual meetings, emails, and an in-person meeting and discussions of broad-ranging legal and technical issues. The City, the State, and EPA were all represented by experienced counsel with the aid of technical experts. The Parties ultimately reached an agreement in principle and exchanged multiple rounds of draft settlement documents that resulted in the mutually acceptable proposed Consent Decree before the Court. "The district court's role in reviewing the essentially private agreement among the parties is 'limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties.'" *Oregon*, 913 F.2d at 586 (quoting *Officers for Just.,* 688 F.2d at 625). The proposed settlement, therefore, reflects the parties' arm's-length and good faith efforts to reach an informed, equitable outcome and is not the product of collusion nor a consequence of one-sided bargaining power.

**B. The Proposed Consent Decree is Substantively Fair and Reasonable.**

In considering substantive fairness, the Court need only determine whether the consent decree represents "a reasonable and factual legal determination" rather than an "ideal" agreement. *J.R. Simplot Co.,* 2024 WL 4545067, at *2 (citing *Swinerton*, 2024 WL 3407681, at *2). Substantive fairness derives from "concepts of corrective justice and accountability: a party

8

**UNOPPOSED MOTION TO ENTER CONSENT DECREE**

should bear the cost of the harm for which it is legally responsible." *Cannons Eng'g Corp.*, 899 F.2d at 87. Because these concepts are not easily quantified in environmental cases, the government's expertise and conclusions receive "the benefit of the doubt when weighing substantive fairness." *Id.* at 88. A court "need only be satisfied that the decree represents a 'reasonable factual and legal determination.'" *Oregon*, 913 F.2d at 581 (quoting *United States v. City of Miami*, 664 F.2d 435, 441 (5th Cir. 1981)).

Here, the agreement embodied in the Consent Decree is substantively fair because it includes significant injunctive measures and a reasonable payment to hold the City accountable for its past CWA violations, as well as required actions to prevent future violations. Consent Decree ¶¶ 9, 13–41. Most notably, the proposed Decree requires the City to upgrade its WWTP to effectively treat ammonia, *E. coli*, biological oxygen demand, and pH by September 1, 2029. *Id.* ¶ 34, App. A. The Consent Decree obtains an appropriately deterrent penalty to compensate for the City's past CWA violations and expedites injunctive relief to achieve compliance and prevent future violations. That approach is substantively fair. *See United States v. City of Waterloo*, No. 15-CV-2087-LRR, 2016 WL 254725, at *4 (N.D. Iowa Jan. 20, 2016) (finding consent decree to address municipal sewer system overflows was substantively fair because "Defendant exercised control over the Plant and Sewer System during the period when the alleged violations of the CWA and Iowa law occurred. Thus, it is fair that Defendant should be asked to answer for and alleviate those alleged violations.").

The Consent Decree is also reasonable. The reasonableness of a proposed settlement is linked to substantive fairness. Factors relevant in the Court's evaluation of the "reasonableness" of a consent decree are (1) "the decree's likely efficaciousness as a vehicle for cleansing the environment" and (2) "whether the settlement satisfactorily compensates the public." *Cannons*

*Eng'g Corp.*, 899 F.2d at 89–90. The Consent Decree's injunctive relief is tied directly to the City's violations of the CWA and aimed at ensuring future compliance. Consent Decree ¶¶ 13–41. The Parties expect that the City's improvements made under the Consent Decree will solve its problems meeting its NPDES Permit. Together with an agreed civil penalty paid for past violations, *id.* ¶ 9, the Consent Decree is a reasonable resolution of Plaintiff's claims.

    **C.    The Consent Decree Serves the Public Interest.**

Courts will also assess whether a settlement serves the public interest. *J.R. Simplot Co.,* 2024 WL 4545067, at *3; *See also Swinerton,* 2024 WL 3407681, at *5. If a consent decree avoids timely and costly litigation and includes injunctive relief that benefits the public, courts will conclude that such a consent decree serves the public interest. *J.R. Simplot Co.,* 2024 WL 4545067, at *3 (concluding that a consent decree with injunctive relief measures to cease exceedance Clean Air Act emission limits and to avoid uncertainty of litigation serves the public interest); *see also PotlatchDeltic Land & Lumber, LLC*, 2024 WL 2013857, at *2 (concluding that a CWA consent decree "is in the public interest" that required lumber company defendant to "offset prior environmental harm, comply with its permit going forward, and pay civil penalties"); *United States v. Placer Mining Co.,* No. 2:04-cv-00126, 2018 WL 7352423, at *2 (D. Idaho June 19, 2018) (holding that entry of a CERCLA consent decree that resulted in recovery of money from defendants to be put into an account for site-specific future cleanup serves the public interest).

The proposed Consent Decree serves the public interest not only through the benefit of extensive injunctive relief to ensure future CWA compliance at the City's WWTP and payment of a civil penalty for past violations, but also by avoiding costly and uncertain litigation that

could result in "fewer remedies for the public than the Consent Decree currently provides." *J.R. Simplot Co.*, 2024 WL 4545067, at *3.

      D.      **The Decree is Consistent with CWA's Statutory Purposes.**

The stated purpose of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The CWA achieves this purpose by requiring facilities to obtain and operate pursuant to the requirements of NPDES permits and meet extensive requirements for preventing discharges of pollution. *See, e.g. Cnty. Of Maui v. Haw. Wildlife Fund,* 590 U.S. 165 (2020). The work that the City will perform under the proposed Consent Decree furthers this goal by including extensive injunctive relief to address past CWA violations and prevent future violations, including most notably a comprehensive WWTP upgrade. In addition, the proposed Consent Decree provides additional injunctive relief to further the CWA's statutory goals through ongoing monitoring of the City's collection system, ongoing managing sewage sludge and lagoons, hiring additional staff for the upgraded WWTP, and ongoing reporting under the consent decree regarding implementation of all injunctive relief. These terms are set forth in an enforceable mechanism with appropriate deadlines, stipulated penalties for noncompliance, and dispute resolution provisions to ensure full and timely compliance. In addition, the proposed Decree includes a civil penalty aimed to "deter current or future violations [of the Clean Water Act]." *Coastal Env't Rights Found. v. Naples Rest. Grp., LLC*, 115 F.4th 1217, 1223 (9th Cir. 2024); *See also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 185 (2000) (noting that CWA penalties deter future violations); *United States v. Lexington-Fayette Urb. Cnty. Gov't*, 591 F.3d 484, 487 (6th Cir. 2010) (noting that Congress included separate authorities for the United States to seek injunctive relief and civil penalties under the CWA to advance its stated objective of restoring and maintaining the

Nation's waters under 33 U.S.C. § 1251(a)). Thus, the proposed Decree ensures that the that WWTP upgrades and other appropriate injunctive measures implemented under the Decree will achieve compliance with the CWA.

### E.    Response to Public Comments

Notice of the lodged Consent Decree was published in the Federal Register for a thirty-day public comment period. *See* 90 Fed. Reg. 7709 (Jan. 22, 2025). The United States received three sets of comments during the public comment period, which are attached hereto as Exhibit 1. Pursuant to 28 C.F.R. § 50.7 and Paragraph 109 of the Consent Decree, the United States reserves the right to withdraw if public comments indicate that the settlement is inappropriate, improper, or inadequate. After carefully reviewing and considering the comments, the United States has concluded that the comments do not provide a basis for amending or rejecting the Consent Decree. A complete Response to Public Comments is attached as Exhibit 2.[1]

#### a.    Comments of the Center for Water Security and Cooperation

The Center for Water Security and Cooperation ("CWSC") made several comments and requests that the United States consider information and/or that further information be provided to the public. The comments generally address four issues: (1) financial transparency and support; (2) federal funding; (3) public review of financial plans; and (4) use of civil penalty to fund the injunctive relief. *See* Ex. 1 at 17-21. The United States has responded to each comment specifically in its Response to Comments, *see* Ex. 2 at 3-5. First, the CWSC's comment letter does not oppose entry of the Consent Decree. Generally, the comments are outside of the scope

---

[1] A comment received from an individual expressed concerns about the drinking water. The Complaint and Consent Decree address effluent violations at Driggs' wastewater treatment plant and do not address drinking water violations. EPA referred the concerns regarding the safety of Driggs' drinking water to its regional drinking water program. *See* Ex. 2 at 2.

12
**UNOPPOSED MOTION TO ENTER CONSENT DECREE**

of the Consent Decree. The CWSC mistakenly assumes that the City has financial constraints that extended the compliance deadlines. However, the deadlines for both short- and long-term WWTP upgrades in the proposed Decree are based on site-specific factors, including estimated timelines for plan development, design, permitting, equipment procurement, and construction. Thus, the deadlines are not based upon City's financial capability. Moreover, the CWSC's comment letter does not bear on the Court's review of the Decree as fair, reasonable, in the public interest, and consistent with the CWA.

### b.  Comments of the Mayor of Victor, Idaho

The Mayor of Victor, Idaho submitted comments expressing concern regarding the Consent Decree's possible impacts on Victor as a user of Driggs' WWTP and Victor's user fees. While Driggs will inevitably need to obtain funding for the costs of implementing the required WWTP upgrade and other injunctive measures, the proposed Consent Decree does not dictate how Driggs will finance the work. Rather, it is solely within Driggs' discretion to determine whether user fees should be raised, bonds issued, loans secured, or a combination, to finance the work required by the Decree. Accordingly, any comment about any proposed user fee increases does not address the purpose or appropriateness of this Decree.

To be clear, the proposed Decree also does not impose legal duties or obligations on Victor. *See* Ex. 2 at 2-3; *see generally* Consent Decree. A third party that is not subject to any explicit obligations under the terms of that decree "cannot block the Consent Decree between [the parties to the Consent Decree] simply because they disagree with its terms." *Sierra Club v. North Dakota*, 868 F.3d 1062, 1066–67 (9th Cir. 2017). The comments do not oppose entry of the proposed Consent Decree. Rather, the comment letter proposes language to minimize "impact on Victor and its citizens." Ex. 1 at 14. The Mayor of Victor's concerns about the

13
**UNOPPOSED MOTION TO ENTER CONSENT DECREE**

proposed Consent Decree terms do not bear on the Court's determination that the proposed Consent Decree is "fair, adequate and reasonable." *Sierra Club*, 868 F.3d at 1068 (citing *Oregon*, 913 F.2d at 580).

The Parties are aware that Victor's City Council voted at the end of March in favor of ceasing to send its effluent to the City of Driggs and building their own WWTP.[2] For now, Victor still sends its effluent to the City WWTP. As plans develop, the Parties may approach this Court for a modification of the Consent Decree to address any changes that this may precipitate in Driggs' plans.

## CONCLUSION

The proposed Consent Decree is procedurally fair, substantively fair and reasonable, serves the public interest, and is consistent with the Clean Water Act. Accordingly, the United States respectfully requests this Court grant this Unopposed Motion to Enter Consent Decree, approve and sign the Consent Decree (at page 41), and enter it as a final judgment in this matter.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

---

[2] Danielle Clegg. *Victor decides to 'break up with Driggs'; cities will have independent wastewater treatment plants*, Teton Valley News (Mar. 31, 2025), https://www.tetonvalleynews.net/community/victor-decides-to-break-up-with-driggs-cities-will-have-independent-wastewater-treatment-plant-facilities/article_aba20059-4ebb-4721-8722-1e1a05716efc.html

**UNOPPOSED MOTION TO ENTER CONSENT DECREE**

/s/ Katherine L. Matthews
KATHERINE L. MATTHEWS
CO State Bar No. 53372
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
999 18th Street, Suite 600
North Terrace
Denver, CO 80202
TELEPHONE:  (303) 844-1365
FACSIMILE:   (303) 844-1350
Email:   Katherine.Matthews@usdoj.gov

JUSTIN D. WHATCOTT
ID State Bar No. 6444
Acting United States Attorney
District of Idaho

CHRISTINE G. ENGLAND
ID State Bar No. 11390
Assistant United States Attorney
District of Idaho
1290 West Myrtle St., Suite 500
Boise, ID 83702
TELEPHONE:  (208) 334-1211
FACSIMILE:   (208) 34-9375
Email:  Christine.England@usdoj.gov

OF COUNSEL:
DANIELLE GRANATT
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 10, Office of Regional Counsel
1200 Sixth Avenue, Suite 155, M/S ORC-11-C07
Seattle, Washington 98101-3140
(206) 553-2108

*Attorneys for Plaintiffs*

**UNOPPOSED MOTION TO ENTER CONSENT DECREE**